## In re SEAIR TRANSPORT SERVICES, INC., Debtor.

### Bankruptcy No. 97–60077–A–11K.

United States Bankruptcy Court,
E.D. California.

May 13, 1999.

Hilton A. Ryder, McCormick, Barstow, Sheppard, Wayte & Carruth, Michael Wilhelm, Fresno, California, for debtor.

Brian J. Hogan, McBreen, McBreen & Kopko, Irvine, California, for respondents.

G. Patrick Jennings, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, D.C., for Internal Revenue Service.

Peter H. Carroll, Office of the United States Trustee, Fresno, California.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: SANCTIONS

WHITNEY RIMEL, Bankruptcy Judge.

A hearing was held on March 25, 1999, on the court's order to show cause why Mercury Air Group, Inc. ("Mercury"), and its counsel, McBreen, McBreen & Kopko (together with Mercury, "Respondents"), should not be sanctioned under Fed. R.Bankr.P. 9011(b). Brian Hogan, Esq., appeared on behalf of the Respondents. Hilton Ryder, Esq., submitted a declaration and Michael Wilhelm, Esq., appeared on behalf of the Debtor. Patrick Jennings, Esq., of the U.S. Department of Justice, Tax Division, submitted a declaration on behalf of the Internal Revenue Service.

This memorandum constitutes the court's findings of fact and conclusions of law as required by Fed.R.Bankr.P. 7052 and Fed. R.Civ.P. 52. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A) and (G).

The court issued its order to show cause as a result of Mercury's motion to modify the automatic stay filed November 13, 1998 and heard December 16, 1998. Mercury sought to modify the automatic stay not on its own behalf but on behalf of the Internal Revenue Service ("IRS") to allow the IRS to foreclose on its tax liens against the Debtors. Mercury, in its motion, offered to pay the IRS $218,000 in full payment of the IRS's liens against the Debtor provided the IRS was granted relief from stay and provided the IRS delivered to Mercury all rights in and to the Debtor's contract with the Army Proving Ground in Yuma, Arizona, prior to January 31, 1999. Mercury contended that talks with the IRS led it to believe that the IRS would be receptive to its proposal.[1]

Mercury's grounds for relief were that the Debtor's plan as proposed was not feasible,[2] that the Debtor's business is not viable, and that Mercury's deal with the IRS would be better than the Chapter 11 plan for all creditors, including the IRS. Mercury's motion went into detail in supporting its claim that each class of creditors would fare better under its proposal.

The IRS and the Debtor both opposed the motion. The IRS opposed the motion on a number of grounds. First, the IRS stated that Mercury lacks standing to lift the automatic stay on the IRS's behalf. The IRS argued that a party in interest must demonstrate that it is seeking to further its own interests in seeking a modification of stay, and relief from stay would merely allow Mercury the same opportunity as any other entity to purchase the Debtor's assets at a tax lien sale. "[A]n

---

1. The Debtor objected to statements allegedly made to Mercury officials by IRS employees on hearsay grounds, and the court sustained the Debtor's objections.

2. The Debtor confirmed an amended plan on March 25, 1999.

asset seized by the government must be sold at a public auction under statutory rules of procedure set forth in 26 U.S.C. § 6335." The IRS also maintained that "[Mercury] is not authorized to litigate on behalf of the United States for any reason. *See e.g.* 28 U.S.C. § 516, expressly reserving the conduct of litigation in which an agency of the United States is interested to officers of the Department of Justice."

The Debtor's opposition stated that it was adequately protecting the IRS pursuant to an agreement between the Debtor and the IRS and that Mercury misrepresented the Debtor's proposed plan, its business prospects, and the likely return to creditors under Mercury's proposal. The Debtor also contended that Mercury had been told by the United States Attorney's Office, and knew at the time it filed its motion, that the Debtor's contracts with the Department of Defense were neither transferrable nor assignable pursuant to 41 U.S.C. § 15. The Debtor accused Mercury of attempting to "cherry-pick[ ] what it considers the one good contract" among the Debtor's several refueling contracts with various military bases and sought sanctions pursuant to Rule 9011.

On December 16, 1998, the motion to modify stay was heard by the court. The court gave the Respondents an opportunity to withdraw the motion after Mr. Hogan explained that the purpose of the motion had been simply to attempt to persuade the IRS to join with or acquiesce in the motion. However, the Respondents did not withdraw the motion.

The court found there was no cause shown for granting relief from the automatic stay and indicated that the motion appeared to be an impermissible attempt to propose an alternative plan of reorganization without going through the formal plan proposal process provided by Chapter 11. The court stated that it would issue an order to show cause why sanctions should

not be imposed against the Respondents pursuant to Rule 9011.

The court's order to show cause ("OSC") was issued on January 26, 1999.[3] The OSC ordered the Respondents to show why they should not be sanctioned for the following:

- Presenting legal claims unwarranted by existing law or by any nonfrivolous argument for the extension, modification, or reversal of existing law or establishment of law (Rule 9011(b)(2)); and

- Presenting factual assertions without evidentiary support or the likelihood of evidentiary support after a reasonable opportunity for further investigation and discovery (Rule 9011(b)(3)).

- In particular, (a) the notice of hearing on the motion states that the hearing is "pursuant to order" of the court, which [it] was not; (b) the moving party sought relief from stay on behalf of the United States, not on behalf of itself, and therefore lacked standing; (c) the motion was served on all creditors, despite Federal Rule of Bankruptcy Procedure 4001(a); and (d) the motion appears to be a proposal for an alternate plan of reorganization (or liquidation) without the procedural protections of the confirmation process.

In response to the OSC, the Respondents submitted two pleadings, one before the OSC was issued and one after. The Respondents argued that the language indicating that the motion had been set "by order of the court" was "inartfully worded" but not a deliberate attempt to mislead the court or other parties.

The Respondents addressed the standing issue by acknowledging that only the United States could levy on the IRS's tax lien and that Mercury brought the motion

---

3. A hearing on the court's order to show cause was held on January 21, 1999, as scheduled by the court at the December 16,

1998, hearing. The hearing was continued to March 25, 1999, because the court had not issued the OSC as of the January 21 hearing.

simply to "elicit the assistance and cooperation of the United States," but the United States chose not to pursue Mercury's desired course of action. · The Respondents insisted that the court had the ability to grant Mercury's motion by virtue of the "very flexible" definition of "cause" in Bankruptcy Code section 362(d)(1) and the "inherent powers of the bankruptcy court," presumably Bankruptcy Code section 105. The Respondents claim that neither the IRS nor the Debtor attacked the central premise of Mercury's motion—that is, that the bankruptcy court *could* have granted the relief requested—and that, therefore, the Respondents had raised a claim "warranted by existing law or by non-frivolous argument for the extension, modification or reversal of existing law or the establishment of new law" and permitted under Rule 9011.

The Respondents maintained that their service of the motion on all creditors was an oversight which resulted in no substantial harm. No additional creditors not entitled to notice under Rule 4001 responded to Mercury's motion.

In answering the court's statement that "the motion appears to be a proposal for an alternate plan of reorganization (or liquidation) without the procedural protections of the confirmation process," the Respondents insisted that they held no improper purpose in bringing the motion and that "Mercury never had, nor did it claim, any authority beyond merely suggesting to the United States and this Court that it might be prudent, given the circumstances prevailing at the time, to lift the automatic stay to provide relief initially to the United States, but also to the other creditors."

This court has the inherent power to sanction pursuant to Fed.R.Bankr.P. 9011 and Bankruptcy Code section 105(a). Rule 9011(a) requires "[e]very petition, pleading, written motion, and other paper, except a list, schedule, or statement, or amendments thereto, [to] be signed by at least one attorney of record in the attorney's individual name."

Under Rule 9011(b), "[b]y presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase cost of litigation; (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief."

■ "There can be little doubt that bankruptcy courts have the inherent power to sanction vexatious conduct presented before the court. The inherent power is recognized in the statutory grant Congress has provided the bankruptcy courts" in section 105(a). *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 284 (9th Cir.1996). Section 105(a) provides:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Mercury purchased a minimal claim from a stationery store in April 1998 and soon after obtained authorization to examine the Debtor pursuant to Fed.R.Bankr.P. 2004 and modification of the automatic stay to speak with government officials. Mercury also sought (and obtained) leave to file an alternative plan, but never did so. Instead, Mercury, through its counsel, filed a motion which, by itself, would provide no benefit to Mercury if it was granted. However, Mercury included in the motion a proposal which bore a suspicious resemblance to an alternative plan, complete with an analysis of the supposed benefit each class of claimants would receive in the event relief were granted *and* the IRS agreed to Mercury's proposal. The motion was served on all creditors— an expense few creditors wish to undertake when not required to do so.

■ But the Respondents do not even attempt to show how Mercury had standing to bring this motion; instead, they insist that the United States *could* have brought this motion, that the United States *could* levy on the Debtor's assets, and the court *could* have granted relief from stay. Notably, the Respondents did not respond to the United States' assertion that only the Department of Justice may litigate on the United States' behalf. If the United States desires relief from stay, it is the United States' prerogative to seek that relief.

The only evidence presented in support of Mercury's motion was a single page from the Debtor's monthly operating reports; a copy of what appears to be the IRS's proof of claim; and the declaration of Seymour Kahn, Mercury's chairman of the board. The Kahn declaration is the only indication that Mercury and the IRS even discussed the Debtor and/or its assets, and the statements supposedly made by IRS employees were stricken as hearsay. Therefore, Mercury had no competent evidence that it, or any other party, was entitled to relief from stay.

■ The court finds that the Respondents presented their motion without standing to bring the motion, without competent evidence, and without a proper purpose. Their position was not supported by "existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Sanctions are therefore in order.

■ The Debtor and the United States submitted declarations outlining the time spent and fees accrued in responding to the Respondents' motion. The Debtor seeks $1,125 in attorneys' fees (4.5 hours at $250 per hour) and $34.03 in expenses, while the United States seeks $1,798.60 in "fees" (17 hours at $105.80 per hour, which includes salary, benefits, and overhead) and $25 in expenses. The Debtor's counsel itemized his time, whereas the United States' counsel did not. Nonetheless, the court finds that both fee requests are reasonable and awards sanctions to the Debtor in the amount of $1,159.03 and to the United States in the amount of $1,823.60. The Respondents are jointly and severally liable for the payment of these sanctions.

A separate order shall issue.